# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TROY TAYLOR** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 06-2897** |
| **BURL CAIN** | * | **SECTION: "B"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C)and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See Title 28, United States Code, Section 2254(e)(2).[1] For the following reasons, it is recommended that

---

[1]Under Title 28, United States Code, Section 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, Title 28, United States Code, Section 2254(e)(2)(A)(I), or the claim relies on a factual basis that could not have

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE.**

## Procedural Background

Petitioner, Troy Taylor, is presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. Petitioner was convicted by a jury in the Fortieth Judicial District Court, St. John the Baptist Parish, Case No. 01-90, on February 21, 2002, of one count of second degree kidnapping, a violation of La. R.S. 14:44.1, and one count of attempted second degree murder, a violation of La. R.S. 14:27 and R.S. 14:30.1.[2] On May 8, 2002, petitioner was sentenced to serve twenty-five years at hard labor for the second degree kidnapping conviction, with two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. Taylor was also sentenced to serve fifty years at hard labor, without benefit of parole, probation,

---

been previously discovered by exercise of due diligence, Title 28, United States Code, Section 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. Title 28, United States Code, Section 2254(e)(2)(B).

[2]See State Record, Vol. 2, pages 00286-00287, Verdict Form. Petitioner was rearraigned on the day of his trial and he entered pleas of not guilty and not guilty by reason of insanity. See State Record, Vol. 2, pages 00308 and 00309.

or suspension of sentence for the attempted second degree murder conviction. Both sentences were ordered to be served concurrently.[3]

Petitioner appealed his convictions and sentences to the Louisiana Court of Appeal, Fifth Circuit, which affirmed the convictions and sentences on February 25, 2003.[4] Petitioner applied for a writ of certiorari and/or review in the Supreme Court of Louisiana. The writ application was denied on November 7, 2003.[5] On August 27, 2004, petitioner filed a uniform application for post-conviction relief (PCR) in the state district court.[6] The district court denied the application for PCR on March 16, 2005.[7] Petitioner's application for supervisory writs was denied by the Louisiana Court of Appeal, Fifth Circuit on April 21, 2005.[8] On May 18, 2005,

---

[3]See State Record, Vol. 3, sentencing transcript dated May 8, 2002, pages 00979-00980.

[4]**State v. Taylor,** 841 So. 894 (La. App. 5th Cir. 2/25/03).

[5]**State v. Taylor,** 857 So.2d 516 (La. 11/7/03).

[6]See State Record, Vol. 4, for a copy of the application for P.C.R.

[7]See State Record, Vol. 4, for a copy of the Judgment.

[8]See State Record, Vol. 4, for a copy of the ruling. **Troy Taylor v. State of Louisiana,** No. 05-KH-408 (La. App. 5th Cir. April 21, 2005).

petitioner mailed his application for Supervisory Writs to the Supreme Court of Louisiana which denied relief on March 17, 2006.[9]

On June 12, 2006, petitioner filed a petition for federal habeas corpus relief with this Court. Petitioner brings the following five claims: (1) ineffective assistance of counsel at trial and on appeal; (2) double jeopardy; (3) insufficient evidence to convict; (4) prosecutorial misconduct; and, (5) the trial court denied him the right to present a defense.[10]

The respondent filed his response on November 6, 2006, wherein he conceded that the petitioner had exhausted the federal claims in the Louisiana Supreme Court and that petitioner's federal application was timely filed.[11]

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including Title 28, United States Code, Section 2254. Amended subsections 2254(d)(1) and (2) contain

---

[9]See State Record, Vol. 4, for a copy of the ruling. **State ex rel. Troy Taylor v. State of Louisiana,** No. 2005-KH-1672 (La. March 17, 2006)(925 So.2d 531).

[10]Fed. Record, Doc. No. 1, Application and Memorandum pages 13-14.

[11]Fed. Record, Doc. No. 11, Answer to Petition for Writ of Habeas Corpus, pages 1-2, paragraph No. 2.

revised standards of review for questions of fact, questions of law and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(2). **Hill v. Johnson,** 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Title 28, United States Code, Section 2254(d)(1). The United States Supreme Court has noted:

> Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in **Williams [v. Taylor,** 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

**Bell v. Cone,** 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Title 28, United States Code, Section 2254(d)(2); see also **Hill,** 210 F.3d at 485; Title 28, United States Code, Section 2254(e)(1).

### Facts[12]

The victim, Secondra Johnson, was twenty years old at the time of the incident in this case. At trial, she testified that she has known the defendant since she was a young girl. Her testimony revealed that on February 22, 2001, she was alone at her residence on 219 Spruce Street when she heard a door open. She remained in her bed sleeping until the defendant opened her bedroom door, jumped on her back and put a knife to her throat. Secondra testified that the defendant demanded to know where her purse was and she responded by telling him that it was in the car. She stated that they fought in her bed and then the defendant took her to the kitchen. She asked the defendant why he was behaving this way, and the defendant responded, "Don't say

---

[12]The facts were taken from the opinion issued on direct appeal. **State v. Taylor,** 841 So.2d 894, 896-899 (La. App. 5th Cir. Feb. 25, 2003). The additional testimony offered by witnesses James Stewart (State Rec., Vol. 4 of 4, pages 00867 thru 00870, Trial Transcript) and Brian Millett (State Rec., Vol. 4 of 4, pages 00870 thru 00875, Trial Transcript) was added by this court to this factual background, after thorough review of the trial transcript.

my name." The defendant then stated, "You say my name again I'm going to stab you." Secondra testified that she said the defendant's name again at which point he stabbed her under the chin. She fought with the defendant and he stabbed her under the chin again.

Secondra testified that the defendant brought her outside of the house and put her into her car. She was able to escape from the car and run toward her uncle's home, but the defendant pursued her and stabbed her once again underneath her chin and dragged her back to the car. She stated that the defendant then drove onto the interstate, while she continued to plead with him to stop and bring her to a hospital, but the defendant kept driving. The defendant stated, "I'm going to do away with your body and your car where nobody never find you." Secondra testified that the defendant made her strip naked in the vehicle and thereafter touched her vagina.

As they traveled along the interstate and approached Siegen Lane in Baton Rouge, Secondra opened the door and jumped out of the vehicle, which was traveling around 60 miles per hour. Secondra testified that, after jumping from the vehicle, she stopped a van and jumped inside. The driver of the van then exited onto Siegen Lane and dialed 911. When the ambulance and police arrived, Secondra stated that her attacker was the defendant, Troy Taylor.

Secondra testified that she remained in the hospital for several days. While in the hospital, an artificial artery was placed in her throat, she required a pint of blood, and she received 27 staples, as well as stitches in her hands. She testified that Detective Joseph showed her a photographic lineup while she was in the hospital, and she identified the defendant as her attacker.

On cross-examination, Secondra testified that she had known the defendant since she was a young child and that he had stayed at her residence for a brief period of time. She also testified that the defendant had never been violent in the past nor did he appear to have been sexually interested in her before.

Holly Kohan, an administrative assistant at Our Lady of the Lake Hospital in Baton Rouge, testified that on the morning of February 22, 2001, she was driving on Interstate-10 (I-10) near the Siegen Lane exit when she saw a woman "fly out" of a moving vehicle. She testified that she saw someone stop to assist the female, so she continued to drive to work where she called 911. Kohan also testified that the driver of the vehicle from which the woman exited did not attempt to assist the woman.

Steven French, a sales representative for Glaser Wholesale in Baton Rouge, testified that on February 22, 2001, he saw a red Mitsubishi Eclipse swerve, and a nude woman exited the vehicle. He then observed the car exit onto Siegen Lane, and he pursued the vehicle. French testified that the vehicle made a U-turn and got back on the interstate heading toward Baton Rouge. He was able to get the license plate number of the vehicle and called 911. French stated that the vehicle was traveling around 55 to 60 miles per hour when the black female fell from the car.

Evelyn Bennet, an employee at Pennington Biomedical Research Center testified that on February 22, 2001, she was traveling on I-10 when she saw a naked woman bleeding on the side of the road. Bennet testified that she stopped and pulled the woman inside her van and, after exiting from the interstate, dialed 911. Bennet also stated that when the woman entered her van, she repeatedly screamed for her to lock the door.

Barbara Wright, Secondra Johnson's grandmother and a resident of 219 Spruce Street in Laplace, testified that she left her home on the morning of February 22, 2001, at approximately 5:25 a.m. in order to go to work. She stated that she received a phone call at work and left to go home. Wright testified that when she

arrived home, she attempted to make a phone call at which time she noticed a chair flipped over and blood all over the kitchen.

On cross-examination, Wright testified that she knew the defendant, Troy Taylor, and that he had previously resided with her for a couple of months before the year 2001. She stated that the defendant had never been violent and that he was friendly with the victim, Secondra Johnson. Wright also testified that she ordered the defendant to leave her home when she suspected him of stealing things from her; however, they remained friendly thereafter. She stated that the defendant had a key when he lived there, but she had gotten it back.

Felix Joseph, a former criminal investigator with the St. John Parish Sheriff's Office, testified that he conducted an investigation of this incident, which resulted in the apprehension of Troy Taylor. He verbally advised him of his constitutional rights, which he waived, and Mr. Taylor also signed a written waiver of his rights. The defendant was thereafter interviewed.

According to Joseph, the defendant told him that he took two hits of acid or LSD on the morning of February 22, 2001. The defendant stated that he was dropped off at the 219 Spruce Street residence, and he knocked on the door. Secondra

Johnson answered the door and let him into the home. Joseph testified that the defendant told him that the next thing he remembered was driving Secondra's bloody vehicle to Baton Rouge. The defendant thereafter told Joseph that he returned to Laplace and abandoned the vehicle in the Cambridge subdivision. Joseph also testified that Secondra Johnson identified the perpetrator as Troy Taylor, and she picked him out of a lineup.

Penny Brown Kendrick, the defendant's former girlfriend, testified that she remembered seeing the defendant on February 21, 2001, at around 6:30 in the afternoon. She testified that the defendant did not appear to be intoxicated and that he remained at her home until approximately 9:30 that night. Kendrick stated that the defendant called later that night but she did not remember the time.

Tiyanica Matthews, Secondra Johnson's cousin, testified that she took photos of Secondra's injuries after the incident. She also testified that Troy Taylor was at a party for her grandmother, Barbara Wright, on February 21, 2001. The defendant left the party with her, and she later dropped him off at Penny Brown Kendrick's home. Matthews also testified that the defendant did not appear drunk when she was with him.

The defendant, Troy Taylor, testified that on the night of February 21, 2001, he went to an EZ-Serve where he purchased a pack of cigarettes and some gin. Later that night, he stopped and bought a rose in a glass and a screen in order to make a crack pipe, after which he went to a bar and smoked crack cocaine. The defendant also testified that he purchased more crack cocaine and gin later that night, in addition to obtaining two hits of acid or LSD from two white males. The defendant stated that the two white males later drove him to Redwood Street, where he consumed the two hits of acid at around 3:00 in the morning.

The defendant testified that he stood on the corner of Redwood Street for a period of time. Then, after feeling the effects of the gin and LSD, he went to Secondra Johnson's residence where he knocked on her window and was let inside by Secondra. Once in the residence, he sat in the living room where he smoked two more rocks of crack cocaine. The defendant testified that the next thing he remembered was that he was driving Secondra's car on the interstate in Baton Rouge, and Secondra was bleeding from her neck and face. Secondra told him that he had attacked her and asked him to bring her to a hospital. He noticed that Secondra's neck was bleeding and asked her to put her shirt over her neck which she did. He stated that Secondra was not naked at that time.

The defendant further testified that Secondra jumped from the car near the Siegen Lane exit. Thereafter, he exited onto Siegen Lane and got back on the interstate driving toward Baton Rouge. He testified that he eventually made a U-turn and drove back toward where Secondra had exited the car, but when he noticed cars stopped near her, he decided to keep driving to his mother's house in Reserve. The defendant stated that he then drove back to Baton Rouge to Earl K. Long Hospital to determine if Secondra had been admitted to the hospital. When he could not locate her at the hospital, he returned to Laplace, and drove to Jackson Hewitt tax service to pick up his "income tax." The defendant testified that he was still driving Secondra's car during this time but that he later parked the car in Cambridge subdivision and secured a ride to Metairie.

The defendant stated that he called the police the following Monday and turned himself in. He also testified that he had a prior felony conviction for first degree robbery.

Witness James Stewart was also called by the defense. Mr. Stewart testified that on the morning of February 22, 2001, he saw Troy Taylor walking down Redwood Street in Laplace between 5 and 6 a.m and he talked with him briefly. James Stewart had just offered a sandwich to his neighbor, Brian Millet, which was

refused. Instead, Stewart offered the sandwich to Troy Taylor, who took it. Stewart testified that his house was nearby to the residence of Sophie Wright, the victim's grandmother, where the victim was staying.

Brian Millett, who lives at 263 Redwood Street, testified that he saw Troy Taylor on Redwood Street on February 22, 2001 at approximately 5:25 a.m. Taylor was standing on the street corner drinking a 16 ounce Budweiser beer. He engaged Taylor in conversation. Millett was eating a ham sandwich when Mr. Stewart pulled up and offered him another sandwich. When Millett refused, Troy Taylor told Stewart he would take it and eat it when he got home. Millett then left for work and noticed Troy Taylor cutting across the yard leading to Ms. Wright's house. Millett further testified that Troy Taylor did not look intoxicated at that time. Taylor was in a "right state of mind", able to hold a "decent conversation" and "didn't stutter, didn't mumble . . . "

The defense called Dr. Pat Kent, a licensed psychotherapist and Regional Director for the State of Louisiana's Office for Addictive Disorders Treatment Region in Southeast Louisiana, who testified as an expert in the field of the effects of alcohol and drug use. Dr. Kent stated that, after having examined the defendant, it was his

opinion that the defendant suffered from toxic psychosis and was not rational at the time of the offense.

The state called Dr. Craig Troxlair in rebuttal, who testified as an expert in the field of forensic psychiatry and the effects of alcohol and drugs on humans. Dr. Troxlair testified that it was his opinion that it was more unlikely than likely that the defendant would not have remembered anything from the time he got to the victim's house until the victim was out of the car.

## Sufficiency of the Evidence

Petitioner alleges that the evidence to support his conviction of attempted second degree murder was insufficient. Specifically, he alleges that at most a rational trier of fact could have found him guilty of the lesser included offense of aggravated battery. Petitioner argues that the prosecution failed to prove that he had any intention of killing the victim and that the victim was never in any danger of dying.[13] Additionally, petitioner concedes that the victim was seriously injured.[14] Finally, petitioner argues that because he entered a plea of not guilty and not guilty be reason

---

[13]See Fed. Rec., Doc. No. 1, Memorandum in Support of Application for Writ of Habeas Corpus, page 29. (Hereinafter referred to as Memo.)

[14]**Ibid,** Memo, page 31.

of insanity, that he presented "undisputable expert testimony" of his insanity at the time of the crime and that he testified in his own defense somehow suggest that the evidence was insufficient to convict him.

A claim of insufficiency of the evidence is a mixed question of law and fact, requiring this Court to examine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent. **Penry v. Johnson,** 215 F.3d 504, 507 (5th Cir. 2000); **Maes v. Thomas,** 46 F.3d 979, 988 (10th Cir. 1995). The Supreme Court established the due process standard a reviewing court must utilize in analyzing the sufficiency of the evidence in **Jackson v. Virginia,** 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Pursuant to **Jackson,** the inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime, as identified by state substantive law, to have been proven beyond a reasonable doubt. *Id.* at 316-17, 99 S. Ct. at 2787; **Donahue v. Cain,** 231 F.2d 1000, 1004 (5th Cir. 2000). In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. **State v. Shapiro,** 431 So.2d 372 (La. 1982). All evidence,

direct and circumstantial, must meet the **Jackson** reasonable doubt standard. **State v. Jacobs,** 504 So.2d 817 (La. 1987).

The Facts section of this Report and Recommendation is adopted and incorporated as if fully set forth herein.

In addressing the issue of whether the evidence was sufficient, the state district court on post-conviction relief applied the correct federal standard as set forth in **Jackson v. Virginia** and also set forth the applicable state law concerning the elements of the offense challenged as follows, in pertinent part:[15]

### Sufficiency of Evidence

On review of the sufficiency of the evidence to support a criminal conviction, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307 (1979). A post verdict judgment of acquittal shall be granted only if the court finds that the evidence viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. La. C.Cr.P. art. 821 (West 2005). Ultimately, all evidence, both direct and circumstantial, must be sufficient under **Jackson** to satisfy a rational juror that the defendant is

---

[15]See State Rec., Vol. 4 of 4, Judgment, pages 6-7, March 16, 2005, **State of Louisiana v. Troy Taylor,** No. 2001-90, Div. B, Fortieth Judicial District Court, Parish of St. John the Baptist, State of Louisiana.

guilty beyond a reasonable doubt. **State v. Wright,** 445 So.2d 1198 (La.1984).

Second degree murder is the killing of a human being when offender has a specific intent to kill or to inflict great bodily harm. LA RS 14:30.1 (A)(1) (West 2005), **State v. Ellis,** 677 So.2d 617 (La. App. 2 Cir. 1996), *writ denied,* 688 So.2d 521 (La. 1997). To prove attempted second degree murder, the state must establish beyond a reasonable doubt that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. LA RS 14:30.1 (West 2005), LA RS 14:27 (West 2005), **State v. Lewis,** 698 So.2d 456 (La. App. 5 Cir. 1997), *writ denied*, 716 So.2d 881 (La. 1997). Although a specific intent to inflict great bodily harm may support a conviction for murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder. **State v. Andrews,** 665 So.2d 454 (La. App. 5 Cir. 1995).

The petitioner, in his application for post conviction relief, avers that the evidence presented at trial was not sufficient to substantiate a conviction for attempted second degree murder. As previously stated, the record illustrates that the petitioner jumped on the victim's back as she lay in bed and placed a knife to her throat. (Testimony of Secondra Johnson, Record p. 661). After the petitioner led the victim from the bedroom into the kitchen, an argument ensured whereupon he repeatedly stabbed the victim under her chin, causing her to lose a substantial amount of blood. (Testimony of Secondra Johnson, Record pp. 661-663). The petitioner then fought the victim to the ground and sliced her on several places on her body. (Testimony of Secondra Johnson, Record p. 663). As a result of her injuries, the victim needed an artificial artery placed in her

throat, twenty-seven staples under her chin, a blood transfusion, and stitched in her hands. (Testimony of Secondra Johnson, Record pp. 668-669).

Similarly, in **State v. Weiland,** 562 So.2d 950 (La. App. 5 Cir. 1990), the defendant was convicted of manslaughter and appealed on several grounds, one of which was that the evidence presented at trial was not sufficient to justify the verdict rendered. In affirming the verdict, the court stated that the evidence presented at trial established that the defendant repeatedly stabbed the victim with a bayonet, thus killing her. **Id.** at 953. Therefore, the court held that, when the evidence is viewed in the light most favorable to the state, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. **Id.**

Furthermore, in **State v. Lewis,** 698So. 2d 456 (La. App. 5 Cir. 1997), the defendant was convicted of attempted second degree murder and appealed on several grounds, one of which was that the evidence presented at trial was not sufficient to justify the verdict rendered. In affirming the verdict, the court held that the intent to kill may be inferred from the extent and severity of the victim's injuries, which included multiple perforation of the large and small intestines, multiple stab wounds in the right forearm, blunt trauma to the right temple, blurred vision, and, most seriously, a puncture of the left iliac artery, which is life threatening and caused a considerable amount of bleeding. **Id.** at 459-460. Moreover, the court noted that, not only did defendant cause Ms. Hayes serious injuries, but he fled the scene without seeking medical assistance for her. **Id.** at 460. Since these cases are markedly analogous to the present case, this court finds that the claim of insufficient evidence is without merit and thus denied.

As previously mentioned, the Louisiana Appellate courts denied relief on the sufficiency of the evidence issue.[16]

Having carefully reviewed the evidence offered to the jury at trial, this Court finds that the state court's rejection of petitioner's insufficiency of the evidence claim was not contrary to or an unreasonable application of United States Supreme Court precedent. *See* Title 28, United States Code, Section 2254(d). Any discrepancies or inconsistencies in the testimony were resolved by the trier of fact and it is not for this Court to usurp the decision-making authority of the jury. **Jackson,** 443 U.S. 307, 319, 99 S.Ct. 2781, 2789. This claim does not warrant habeas relief.

## Double Jeopardy

Petitioner was convicted of one count of second degree kidnapping and one count of attempted second degree murder regarding the same victim. He argues that his convictions for separate and distinct offenses which occurred during a continuous course of criminal conduct, violates his constitutional right against dual prosecution for the same offense as proscribed by the Double Jeopardy Clause of the Fifth and Fourteenth Amendments [17] to the United States Constitution. The

---

[16]See this Report, page 3 and 4, footnotes 8 and 9.

[17]See **Brown v. Ohio,** 431 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The Double Jeopardy Clause of the Fifth Amendment applies to the States through the Fourteenth

established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated by the United States Supreme Court in **Blockburger v. United States,** 284 U.S. 299, 304, 525 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . ."

The State argues that petitioner's argument is misguided because the charge of second degree kidnapping requires proof of the additional factual element of seizing and carrying off the victim from one place to another. Said factual element is not required to be proven to establish and prove the charge of attempted second degree murder. Moreover, "the same element test ... inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution. **United States v. Dixon,** 509 U.S. 688, 696, 113 S.Ct. 2849 (1993).

---

Amendment.

The pertinent sections of the statute define second degree kidnapping as (1) forcible seizing and carrying of any person from one place to another; (2) when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon. See La. R.S. 14:44.1A.(5), B.(1).

Attempt, as it relates to attempted second degree murder, is defined, in pertinent part:

> A. Any person who, having specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

*See* La. R.S. 14:27A.

Second degree murder is defined, in pertinent part, as:

> A. Second degree murder is the killing of a human being:

> (1) when the offender has a specific intent to kill or to inflict great bodily harm;

*See* La. R.S. 14:30.1A.(1).

The state district court thoroughly addressed the double jeopardy claim

on post-conviction relief and applied the correct federal standard and test as set forth

in **Blockburger v. United States** as follows, in pertinent part:[18]

> The Fifth Amendment to the United States Constitution, as well as Article 1, Section 15 of the Louisiana Constitution of 1974, prohibit placing a person twice in jeopardy of life or limb for the same offense.
>
> ...
>
> However, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. **State v. Washington,** 670 So.2d 1255, 1260 (La. App. 5th Cir. 1996). Louisiana has not adopted a "same transaction" test which would prohibit, on double jeopardy grounds, prosecutions for different crimes committed during one sequential, continuing course of conduct. **Id.**
>
> The two tests used by Louisiana courts when examining double jeopardy violations are the "distinct fact" or the **Blockburger** test and the "same evidence" test. **State v. Blackson,** 865 So.2d 272, 277 (La. App. 2nd Cir. 2004). Although the Louisiana Supreme Court has accepted both the **Blockburger** test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. **State v. Miller**, 571 So.2d 603, 606 (La. 1990). In **State v. Steele,** 387 So.2d 1175 (La.

---

[18]See State Record, Vol. 4 of 4. Judgment, pages 3-4, March 16, 2005, **State of Louisiana v. Troy Taylor,** No. 2001-90, Div. B, Fortieth Judicial Dist. Court, Parish of St. John the Baptist, State of Louisiana.

1980), the Louisiana Supreme Court explained the "same evidence" test as follows:

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...

In the present case, the petitioner was convicted of attempted second degree murder and second degree kidnapping. Second degree murder is the killing of a human being when offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1) (West 2005), **State v. Ellis,** 677 So.2d 617 (La. App. 2nd Cir. 1996), writ denied, 716 So.2d 881 (La. 1997).

Additionally, the second degree kidnapping, in this case, resulted from the offender forcibly seizing and carrying the victim from one place to another wherein the victim was physically injured or sexually abused or imprisoned or kidnapped when the offender was armed with a dangerous weapon or led the victim to reasonably believed that he was armed with a dangerous weapon. LA R.S. 14:44.1(A)(3), (A)(5), (B)(1) (West 2005).

As the record reflects, the petitioner jumped on the victim's back as she lay in bed and placed a knife to her throat. (Testimony of Secondra Johnson, Record p. 661). After the petitioner led the victim from the bedroom into the kitchen, an argument ensued whereupon he repeatedly stabbed the victim under her chin, causing her to lose a substantial

amount of blood. (Testimony of Secondra Johnson, Record pp. 661-663). The petitioner then fought the victim to the ground and sliced her on several places on her body. (Testimony of Secondra Johnson, Record, pp. 668-669). The jury subsequently found the petitioner guilty of attempted second degree murder based on these actions. (Record pp. 972-973).

Additionally, immediately after the petitioner fought the victim to the ground and repeatedly stabbed her in the kitchen, the petitioner told the victim that they were "going for a ride" and forced her out of the house with the knife at her throat. (Testimony of Secondra Johnson, Record p. 663). The victim continued to fight with the petitioner outside, and he forced her into the passenger side of her car, whereupon she jumped out the car and ran toward the neighbor's house. (Testimony of Secondra Johnson, Record p. 664). The petitioner chased the victim down and stabbed her in the chin for the fourth time. (**Id.**) The petitioner then dragged the victim by her feet from the neighbor's yard and physically picked her up and placed her in the car, at which point he sat on her legs and forced the door shut. (**Id.**) The victim continued to attempt to open the door of the car, change gears, and grab the wheel, upon which the petitioner would punch the victim's hands. (Testimony of Secondra Johnson, Record pp. 664-666). The petitioner also made the victim remove all of her clothing, after which the victim eventually jumped out of the moving vehicle in Baton Rouge to escape the defendant. (Testimony of Secondra Johnson, Record pp. 666-667). The jury subsequently found the petitioner guilty of second degree kidnapping based on these actions. (Record pp. 972-973).

After comparing the facts of the instant case with those of another state case, the district court concluded:

> Likewise, in this case, the petitioner, while arguing with the victim in the kitchen, repeatedly stabbed the victim in the chin and throat area. Upon completion of this overt attempt to kill or inflict great bodily harm upon the victim, the elements for attempted second degree murder were complete. Thereafter, the petitioner, while armed with a knife, stabbed, dragged along the ground, and forcibly seized the victim and placed her in a car. He additionally punched the victim and forced her to remove all of her clothes. Upon completion of these actions, the elements for second degree kidnapping were complete. Therefore, this court finds that a claim of double jeopardy is without merit and thus denied.

On the record before this Court, petitioner fails to establish that the state court's denial of relief based upon double jeopardy was contrary to federal law as established in **Blockburger v. United States.** The claim is meritless.

## Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel, during his trial and on appeal, in violation of his Sixth Amendment right. Specifically, petitioner argues that his trial counsel failed to object to erroneous jury instructions concerning reasonable doubt and second degree kidnapping. Petitioner also claims that his appellate counsel was ineffective because he did not bring the issues

concerning challenges to the reasonable doubt and second degree kidnapping jury instructions on direct appeal.

Petitioner further claims that his appellate counsel was ineffective because counsel brought a claim regarding ineffective assistance of counsel on direct appeal, and this filing barred petitioner from being able to file a claim of ineffective assistance of counsel on post-conviction relief.[19]  He cites La. C.Cr.P. art. 930.4(A) as the procedural bar at issue, which states: "[U]nless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered."

In a federal habeas challenge to a state criminal conviction, the question of whether a lawyer was ineffective in rendering assistance is a mixed question of law and fact.  **Strickland v. Washington,**  466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 1332 (1984).  As such, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

---

[19]The record shows that petitioner's appellate counsel first brought an ineffective assistance of counsel claim on direct appeal claiming trial counsel failed to file a motion to suppress the statement given to Detective Felix Joseph by petitioner.  See State Record, Vol. 4 of 4, Judgment pages 1-2; March 16, 2005, **State of Louisiana v. Troy Taylor,** No. 2001-90 Div. B, Fortieth Judicial District Court, Parish of St. John the Baptist, State of Louisiana.

Title 28, United States Code, Section 2254(d)(1). In petitioner's case, the issue of ineffective assistance was first raised on direct appeal, and again on post-conviction relief in the state district and appellate courts.

In **Strickland,** the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. *See* **Strickland,** 466 U.S. at 697. To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See* **Styron v. Johnson,** 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." **Little v. Johnson,** 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See* **Strickland,** 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" **Lockhart v. Fretwell**, 506 U.S. 364, 371 (1993) (quoting **Strickland,** 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See* **Crockett v.**

**McCotter,** 796 F.2d 787, 791 (5th Cir. 1986); **Mattheson v. King,** 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland,** 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." **Id.** In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." **Crockett,** 796 F.2d at 793. Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." **Jernigan v. Collins,** 980 F.2d 292, 296 (5th Cir. 1993); *see also* **Clark v. Johnson,** 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. **Strickland,** 466 U.S. at 697.

In the instant application, it is first claimed that trial counsel was ineffective in failing to object to jury instructions pertaining to reasonable doubt and

the elements required to prove second degree kidnapping. Petitioner fails to specifically delineate how the reasonable doubt instruction violated his constitutional rights. Petitioner only cites the state cases of **State v. Mack,** 403 So.2d 8 (La. 1981) and **State v. McDaniel,** 410 So.2d 754 (La. 1982) in support of his challenge, without explanation of how these cases impact his own case.

In **State v. Mack,** a state conviction was reversed because the trial judge failed to comply with Louisiana Code of Criminal Procedure Art. 804, which requires that, in all cases, the jury must be instructed to give the defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence in the case. 403 So.2d at 8-9.

In **State v. McDaniel,** a state conviction was reversed because the trial court's reasonable doubt instruction failed to comply with La. C. Cr. P. art. 804, in two respects: 1) Reasonable doubt was defined in such a way as to mislead the jury into applying an incorrect burden of proof; and, 2) a portion of the jury charge incorrectly prohibited the jury from "going beyond the evidence to seek for doubts upon which to acquit the defendant." 410 So.2d at 756.

In petitioner's case, the record shows that the trial court instructed the jury as follows on reasonable doubt:

Reasonable doubt standard. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.

See State Record, Vol. 4 of 4, page 00943.

Additionally, the jury was correctly instructed to "give the defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence." See State Record, Vol. 4 of 4, page 00943. Moreover, reasonable doubt was not incorrectly defined so as to mislead the jury in applying the burden of proof or to prohibit the jury from "going beyond the evidence", as in **State v. McDaniel**. A full review of the jury charges in petitioner's case establishes that the reasonable doubt instruction was in compliance with La. C.Cr.P. art. 804.[20] Petitioner fails to show,

---

[20]The court notes that even if the trial court failed to comply with the requirements of its procedural rules, such a failure alone would be insufficient to trigger a constitutional violation worthy of federal habeas relief. To the extent petitioner is complaining that the state failed to follow its own procedures, his claim is not cognizable on federal *habeas* review. The United States Supreme Court has held that, "it is not within the province of a federal habeas court to reexamine state court determinations on state law questions." **Estelle v. McGuire**, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "[F]ederal habeas corpus relief does not lie for errors of state law." **Lewis v. Jeffers**, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). Federal habeas relief is reserved for the vindication of federal constitutional rights; not rules existing solely under the rules of state procedure. **See Manning v. Blackburn**, 786 F.2d 710, 711-12 (5th Cir. 1986); **Nelson v. Estelle**, 642 F.2d 903, 905-06 (5th Cir. 1981). .

therefore, that there was any basis for trial counsel, or subsequently for appellate counsel, to challenge the reasonable doubt instruction in this case. Petitioner falls short of meeting the burden of proof to support an ineffective assistance claim regarding reasonable doubt.

Turning to petitioner's claim regarding the jury instruction pertaining to the elements of second degree kidnapping, the trial court instructed the jury as follows, in pertinent part:

> Second Degree Kidnapping is the forcible seizing and carrying of a person from one place to another: When the person is physically injured or sexually abused; or when the offender is armed with a dangerous weapon.
>
> To convict the defendant of the offense charged, you must find beyond a reasonable doubt that the State proved: One, that the defendant forcibly seized Secondra Johnson and carried her from one place to another; and, two, that Secondra Johnson was physically injured or sexually abused or that the offender was armed with a dangerous weapon.

(See State Record, Vol. 4 of 4, pages 00948-00949. Also see, State Record, Vol. 2 of 4, for a copy of the Responsive Verdict-Form page 00269.)

The court has carefully reviewed the state trial court's charge of second degree kidnapping and has determined that it correctly reflects the state's burden of

proof as required by the statute, namely La. Rev. Statute 14:44.1.[21] Under the statute,

the State was required to show *any* of the acts listed under Section B, *i.e.*, B(1), B(2),

*or* B(3)) *and* to show that the victim was either: A(1) used as a shield or hostage

(inapplicable); *or*, A(2) used to facilitate the commission of a felony or the flight after

an attempt to commit or the commission of a felony;(inapplicable here); *or*, A(3)

physically injured or sexually abused (either are potentially applicable); *or,* A(4)

---

[21]**La. Rev. Stat. Section 14:44.1 provides:**

**Second degree kidnapping**

A.  Second degree kidnapping is the doing of *any* of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); *or*
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
(emphasis added).

B.  For purpose of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; *or*
(2) The enticing or persuading of any person to go from one place to another; *or*
(3) The imprisoning or forcible secreting of any person.
(emphasis added).

C.  Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years.  At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.

imprisoned or kidnapped for seventy-two or more hours . . .(inapplicable) *or*, A(5)

imprisoned or kidnapped when the offender is armed with a dangerous weapon or

leads the victim to reasonably believe he is armed with a dangerous weapon

(potentially applicable). The charge given to the jury in petitioner's case properly

coupled the only applicable provision of Section B, which was B(3), that of physically

injuring or sexually abusing the victim, with either of the two applicable provisions

under Section A, that is A(3) or A(5). In sum, the trial court's instruction was

properly given to the jury and petitioner cannot show that either trial or appellate

counsel had a basis for challenging said instruction. Counsel cannot be deficient for

failing to press a frivolous point. **Sones v. Hargett**, 61 F.3d 410 (5th Cir. 1995),

citing **Koch v. Puckett**, 907 F.2d 527 (5th Cir. 1990). Again, his claim of ineffective

assistance must fail.

Finally, with regard to appellate counsel's presentation of the issue of

ineffective assistance on direct appeal, petitioner fails to show any prejudice from

counsel's actions. The state appellate court noted that ineffective assistance claims

are normally not addressed on direct appeal but can be addressed if the record is

sufficient to resolve the claim. Apparently finding the record sufficient, the appellate

court denied the ineffective assistance of counsel claim. In order to show prejudice

from counsel's action, petitioner would have to show that, but for raising the claim on direct appeal, he would have prevailed in post-conviction proceedings on the merits of the claim. He fails to meet this burden.

## Prosecutorial Misconduct and Denial of
## Right to Present a Defense

Petitioner presents the claims of prosecutorial misconduct and denial of the right to present a defense[22] in tandem as he claims the two issues are intertwined. Petitioner argues that he was denied the right to present a defense because the prosecutor objected to the defense calling witnesses Clay Raymond and Herbert Johnson to testify at trial. Raymond and Johnson were incarcerated at the time on non-related drug charges and they had been subpoenaed to testify. Petitioner suggests that Raymond and Johnson were to testify that they sold crack-cocaine or either smoked crack-cocaine with petitioner on the night prior to the crime.[23] The trial court appointed attorneys to represent Raymond and Johnson.[24] Petitioner asserts that the prosecution had threatened to prosecute Raymond and Johnson to the fullest extent

---

[22]Petitioner's defense was insanity at the time of the crimes because of drug and alcohol use and toxic psychosis resulting from said substance abuse. (Crack- cocaine, LSD and alcohol.)

[23]See Federal Rec. Doc. #1, Habeas Corpus Application pages 32-33.

[24]See State Rec., Vol. 4 of 4, pages 00790 thru 00792, Trial Transcript.

of the law and to use their testimony against them.[25] After consultation with witnesses Raymond and Johnson, both attorneys reported that each witness would invoke his Fifth Amendment right and not testify.[26] At this point, defense counsel requested that its investigator be allowed to testify with regard to what the two witnesses had reported to him. After hearing argument, the court denied the defense request but allowed a proffer of testimony from Don Carter, the investigator, outside of the presence of the jury.[27]

Petitioner thus argues that his right to a fair trial and right to present a defense were violated when the prosecution forced the witnesses to invoke their Fifth Amendment rights and when the trial court refused to allow the defense investigator, Don Carter, to testify before the jury concerning what Raymond and Johnson had told him.[28] The record shows that the trial court made an evidentiary ruling that Carter's

---

[25]See Federal Rec. Doc. #1, pages 32-33, Habeas Corpus Application.

[26]**Ibid.**

[27]See State Rec., Vol. 4 of 4, pages 00804-00808, Proffered testimony of Don Carter. Carter claimed that Raymond and Johnson told him that they sold crack cocaine and also smoked it with petitioner the evening before the crime occurred; that petitioner was drinking gin and that other individuals were selling LSD in the area.

[28]See Federal Rec. Doc. #1, Habeas Corpus Application pages 34-37.

proposed testimony was hearsay and not admissible under state law.  (See State Rec.,

Vol. 4 of 4, Trial Transcript pages 00801-00802).

Petitioner also claims that the prosecutor committed misconduct by repeatedly

pointing out to the jury that the defense had not put one witness on the stand to

corroborate petitioner's own testimony.  Petitioner points to the following portions of

the prosecutor's closing argument and rebuttal argument as illustrative of his claim:

> The defense, in their opening statement, told you that they
> would prove to you, because it is their burden, that he was
> not in his right mind.  Ladies and gentlemen, that didn't
> happen.  All of this up here, every one of these elements
> has been proven beyond a reasonable doubt.  The only
> thing that has not been proven in this courtroom is that the
> defendant was not in his right mind.  They promised you
> that they would prove insanity, that they would prove to
> you that he had lost his ability to distinguish right from
> wrong. Never happened.  Never got to the point where they
> proved that to anybody in this courtroom.
>
> They said that they would prove to you that he was
> intoxicated and he was drugged to the point where he
> would be incapable to forming the specific intent to kill.
> Never happened.  The proof never happened.  You heard
> some testimony but, ladies and gentlemen, testimony by
> itself is not proof unless you say it is.  And the reason I'm
> up here standing before you is to point out to you that it
> never reached that level of proof.  It never got beyond the
> point of conjecture.  It never got beyond the point of self
> serving testimony.  It's just not proof, it had not been
> proven.

See State Rec., Vol. 4 of 4, pages 00920-00921, transcript of closing argument.

This time line looks really nice, it's very well done. It's neat, got squares and little points, I wish I could do stuff like that. But, you know, better than half of the stuff on this time line, on this time line comes out of the imagination of Troy Taylor, you know. All of these times, when I took crack in front of Weegie's, and I smoked it there for an hour and I went over here and I did this and I drank gin over here and I did LSD over here and all, this all his self serving statements. This is, this part in the middle is all manufactured. You know, this is what's it going to take to get me out of this. This is what it's going to take to get me out of this. Maybe, if I get the right jury it might get me out of this, you know. This is all conjecture. What's the factual part? What's the fact –

You know, you don't want to just buy into whatever the defendant says. Because he's got, he's got an ax to grind here, you know, he stands to be convicted of a serious crime. So let's look for a little corroboration. Let's look for somebody that's not interested in the outcome of this case, if you will.

Let's look at some of the other stuff, you know, like the part about Brian Millet observing him five-thirty in the morning. Okay. Five-fifteen James Stewart talks to him, five-twenty-five. Five-forty-five Millet observes him walking to the backyard of the house. Yeah. Those are, those are people, those guys came in here, they don't, they don't care, they're not friends with anybody. I mean, they were his witnesses, but I'm willing to accept them as truthful. I don't see any particular reason why you should disbelieve those guys. That's reliability there, okay?

When a defendant comes in and mixes up this little cocktail for himself, if you will, that's not reliability. That's, that's when you should be saying, well, you know, I'd like to have a little corroboration for this, you know, I'd like to have somebody else, you know, tell me this, you know. But you don't. So he's just going to come in here and cook up this cocktail for you out of his brain and say go ahead, believe me, and, therefore, I'm psychotic and, therefore, I didn't do it and, therefore, I'm not guilty. I don't think so, ladies and gentlemen.

(See State Rec., Vol. 4 of 4 pages 00933-00934, transcript of rebuttal by the prosecutor.)

The trial court specifically addressed petitioner's prosecutorial misconduct claim in its March 16, 2005, Judgment,[29] in pertinent part:

### Prosecutorial Misconduct and Impairment of Defense by Trial Court

The Sixth Amendment of the United States Constitution expressly guarantees the defendant in all criminal prosecution the right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. U.S. Const. Amend VI. The confrontation clause secures an opportunity for the defendant physically to confront and cross-examine witnesses presented against him in a court of law, while the compulsory process clause secures for the defendant the right to present a defense and the right to present the defendant's version of the facts as well as the prosecution's.

---

[29]See State Rec., Vol. 4 of 4, for a copy of the March 16, 2005, Judgment, specifically pages 7-9 of the Judgment.

**Id.**  The confrontation and compulsory process clauses of the Sixth Amendment were made applicable to the states through the Fourteenth Amendment of the United States Constitution in **Porter v. Texas,** 380 U.S. 400 (1965) and **Washington v. Texas,** 388 U.S. 14 (1967), respectively.

Additionally, the Fifth Amendment to the United States Constitution, made applicable to the states in **Malloy v. Hogan,** 378 U.S. 1 (1964), in pertinent part, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself," and the Louisiana Constitution, Art. 1 §§ 16 (1974) states that "[n]o person shall be compelled to give evidence against himself." However, LA C.Cr.P. 439.1 provides for a statutory grant of immunity for a witnesses in exchange for his testimony but is only applicable when the attorney general requests it in conjunction with the prosecuting district attorney. **State v. Johnson,** 558 So.2d 325 (La. App. 3 Cir. 1990), *writ denied*, 1076 (La. 1990).  Furthermore, Louisiana courts possess no statutory authority to grant immunity outside of LA C.Cr.P. article 439.1's procedure.  **Id.**

Petitioner, in his application for post conviction relief, complains that the prosecution and the trial court violated his Sixth Amendment rights by not allowing two defense witnesses to testify at trial.  The petitioner claims that these two witnesses were going to testify that, on the night of perpetration of the crimes[30], they had sold crack-cocaine to and smoked crack-cocaine with the petitioner.  At the time of the trial, these two witnesses were incarcerated due to

---

[30]Although the trial court's opinion reports that the witnesses would have testified regarding what occurred on the "night of" the crime, the record makes clear that petitioner's crime occurred during the morning hours of February 22, 2001 whereas the witnesses allegedly would have testified about what occurred in the evening hours of February 21, 2001.

pending drug charges, and the prosecution refused to grant the two witnesses immunity. Out of the presence of the jury, the trial court appointed attorneys to the two witnesses, who apprised them of the situation at hand. These two witnesses subsequently invoked their Fifth Amendment right against self-incrimination and, therefore, refused to testify.

In **State v. Mattheson,** 407 So.2d 1150 (La. 1981), the defendant was convicted of first-degree murder and appealed based on several grounds, one of which being that the trial judge erred in not granting the defendant's wife immunity when she invoked the Fifth Amendment right against self-incrimination after being called as a defense witness. In affirming the conviction, the court held

> We do not consider that the sixth amendment supports a claim for defense witness immunity. Traditionally, the sixth amendment's compulsory process clause gives defendant the right to bring his witness to court and have the witness' non-privileged testimony heard, but does not carry with it the traditional right to displace a proper claim of privilege, including the privilege against self-incrimination. **United States v. Turkish**, 623 F.2d 769 (2nd Cir. 1981); **United States v. Lenz,** 616 F.2d 960 (6th Cir. 1980), *cert. denied,* 447 U.S. 929 (1980). Nor has section 16 of article of the Louisiana Constitution of 1974 been construed to grant such a right.

**Id.** at 1160.

The **Mattheson** court clearly stated that the Sixth Amendment of the United States Constitution and section

16 of article 1 the Louisiana Constitution do not support a claim for defense witness immunity. Therefore, this Court finds that the prosecution did not impinge the petitioner's Sixth Amendment rights, and this claim is thus denied.

Moreover, in **State v. Edwards,** 419 So.2d 881 (La. 1982), the defendant was convicted of two counts of first-degree murder and appealed on several grounds, one of which was that the trial court erred in not allowing the defendant to call as witnesses before the jury two co-defendants being separately tried. However, out of the presence of the jury, these co-defendants refused to answer questions concerning the night of the murders, and each claimed Fifth Amendment protection. **Id.** At 891-892. The appellate court, in affirming the conviction, held that, once the trial judge determined that the witnesses would refuse to answer any question concerning the murders, it was proper for him not to allow the witnesses to be called before the jury. **Id.** At 892; **State v. Johnson,** 404 So.2d 239 (La. 1981); **State v. Day,** 400 So.2d 622 (La. 1981); **State v. Berry,** 324 So.2d 822 (La. 1975), *cert. denied,* 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). Therefore, this Court finds that it did not violated the petitioner's Sixth Amendment rights, and this claim is thus denied.

Prosecutorial misconduct may justify the reversal of a conviction where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process". **Foy v. Donnelly**, 959 F.2d 1307, 1315 (5th Cir. 1992), (citing **Darden v. Wainwright**, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)(other citations omitted). "A trial is fundamentally unfair if 'there is a

reasonable probability that the verdict might have been different had the trial been properly conducted.'" **Id.** at 1317 citing **Rogers v. Lynaugh**, 848 F.2d 606, 609 (5th Cir. 1988). A claim of prosecutorial misconduct requires proof of improper conduct by the prosecutor that, taken in the context of the trial as a whole, violated the defendant's due process rights. **Beardslee v Woodford**, 358 F.3d 560 (9th Cir. 2004). Similarly, federal habeas review of a state prosecutor's opening and/or closing arguments is restricted to a determination of whether the prosecutor's comments "so infected the trial with unfairness as to deprive the defendant of due process. The petitioner bears the burden of showing whether that the prosecutor persistently exhibited pronounced misconduct or that the trial evidence was so insubstantial that, without the prosecutor's improper comments, that verdict would have been different." **Pena v. Scott,** 1994 WL 486961, 5 (5th Cir. 1994)(citing **Edwards, v. Scroggy,** 849 F.2d 204, 210 (5th Cir. 1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 597 (1989)).

In the context of petitioner's trial, the prosecution's statement (outside of the jury's presence) that the two witnesses, Raymond and Johnson, would be prosecuted if they provided inculpatory evidence that they had committed a crime cannot be said to be misconduct. These two witnesses were incarcerated on drug-

related charges. Each had an opportunity to discuss their testimony with a lawyer and each decided that there was a potential for criminal liability if they were to testify as witnesses for petitioner. The prosecution's actions in informing them that their Fifth Amendment rights might be implicated and the court's action in appointing counsel to represent them was proper in light of the charges they were already facing. Moreover, the prosecutor's comments that petitioner had not provided a corroborative witness were not necessarily referring only to the testimony of the two witnesses who were excluded from trial. The defense had also put on the testimony of Brian Millet, who indicated that the defendant was in a "right state of mind", able to hold a "decent conversation" and "didn't stutter, didn't mumble," shortly before the defendant entered the victim's residence and committed the crime.[31] This testimony of the defendant's own witness failed to corroborate the defendant's claim that he was suffering from toxic psychosis or from a drugged state that prevented him from having specific intent. Additionally, although the defense put on the testimony of an expert who opined that the defendant suffered from toxic psychosis, that he believed in the veracity of petitioner's claim that he was so impaired from drug and alcohol usage that he was unable to determine right from wrong and was not rational at the time of

---

[31]See State Rec. Vol. 4, pages 00870-00875, Trial Transcript.

the offense, the expert was basing his opinion on the information given by petitioner and not from first-hand knowledge or from his personal treatment of Taylor. The defense also offered the testimony of James Stewart, who saw the petitioner shortly before the crime but did not corroborate his story. Felix Joseph, the St. John Parish Sheriff's office investigator, related that petitioner had informed him about his alleged drug usage on the evening and early morning before the crime but he also could not corroborate petitioner's claim. Also, defendant's girlfriend, Penny Kendrick, testified that she was with petitioner the evening of February 21, 2001 until 9:30 p.m. but he was not intoxicated. Therefore, the prosecutor's remarks about the lack of corroborative testimony could easily be targeting any of these witnesses rather than the two who were excluded.

Finally, petitioner's own testimony did not support his claim that he was so impaired that he could not determine right from wrong. Taylor explained to the jury how he had returned to the location where the victim leaped from the car but left when he saw other cars on the scene. His statement that he then was able to drive to his mother's home in Reserve, drive back to Baton Rouge to check to see if the victim was hospitalized, return to LaPlace to pick up his income tax check, leave the

victim's car in a subdivision and catch a ride back to Metairie must not have been convincing to a jury being asked to believe he did not  know what he was doing.

Given the significant evidence against petitioner which established his guilt and undermined his asserted defense, the court finds that the prosecutor's comments were harmless.  The victim's testimony about petitioner's behavior on the morning of the crime was sufficient alone for the jury to have concluded that petitioner was not insane at the time of the offense based upon his drug and alcohol usage.  Although petitioner testified that he had smoked crack cocaine in the victim's living room immediately prior to the crime, the victim testified that the petitioner's speech was not slurred and he was talking normally.[32]  She further reported that, although she had known petitioner for a long time, she had not known him to abuse crack cocaine, LSD or acid.[33]  Based upon the other evidence offered regarding petitioner's physical and mental state at the time of the crime, the court finds that the prosecutor's comments did not so infect the trial with unfairness as to constitute a violation of petitioner's right to due process.  As such, petitioner is not entitled to habeas corpus relief on his claim of prosecutorial misconduct.

---

[32]State Rec., Vol. 3 of 4, page 00672, Trial Transcript Trial Transcript.

[33]State Rec., Vol. 3 of 4, pages 00672 thru 00691, Trial Transcript.

With regard to petitioner's claim that he was denied the right to present a defense, the court finds said claim to be also without merit. First of all it should be noted that it is generally not the proper role of a federal habeas court to review the admissibility of evidence under state law. **Jernigan v. Collins**, 980 F.2d 292, 298 (5th Cir.1992). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules". **Marshall v. Lonberger**, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983). A state court's evidentiary ruling presents a cognizable federal habeas claim only if the ruling results in a "denial of fundamental fairness." *See* **Neal v. Cain**, 141 F.3d 207, 214 (5th Cir. 1998).

Second, the Compulsory Process Clause of the Sixth Amendment grants a defendant the right to offer the testimony of favorable witnesses and to compel their attendance at trial.[34] To exercise the compulsory process right, a defendant must show that the testimony would be material, favorable to the defendant, and not merely cumulative. **U.S. v. Valenzuela-Bernal**, 458 U.S. 858, 873 (1982); **U.S. v.**

---

[34]The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. This right was held applicable to the states through the Fourteenth Amendment in **Washington v. Texas**, 388 U.S. 14, 19 (1967).

**Villanueva**, 408 F.3d 193, 200 (5ᵗʰ Cir. 2005), citing **Washington v. Texas**, 388 U.S. at 16.[35]

The testimonial evidence which was excluded here, i.e., the proffered testimony of Carter regarding what Raymond and Johnson allegedly would have stated if called to testify, was relevant but likely not material.  "In assessing materiality, we must determine whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." **Berkley v. Quarterman**, – F.3d –, 2009 WL 405858,  (5ᵗʰ Cir., 2/18/09).

As previously explained, the witnesses who were closest in time to the crime's occurrence (with the exception of the victim) were Stewart and Millet, who saw the defendant sometime after 5:00 a.m. on the morning of February 22, 2001. The information from witnesses Raymond and Johnson offered through the testimony of Don Carter, the investigator, was probative of the defendant's condition on the night *prior* to the crime, but that evidence was further away in time from the time the

---

[35]In **Valenzuela-Bernal**, the court stated that the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him "compulsory process for obtaining *witnesses in his favor*. U.S. Const., Amend. 6 (emphasis added). U.S. Const., Amdt. 6 (emphasis added).  In **Washington**, this Court found a violation of this Clause of the Sixth Amendment when the defendant was arbitrarily deprived of 'testimony [that] would have been relevant and material, and ... vital to the defense.'" 458 U.S. 858, 867 (citation omitted).

crime occurred than other evidence considered by the jury. In light of the testimony of Millet and the lack of corroboration by Stewart, however, who both saw the petitioner immediately preceding the crime, the excluded testimony cannot be said to be material.

Finally, the compulsory process right to present a defense is not absolute. It is well settled in this circuit that a defendant's Sixth Amendment right of compulsory process to obtain witnesses in his favor *must yield* to a witness's Fifth Amendment privilege against self-incrimination. **United States v. Hernandez**, 962 F.2d 1152, 1161 (5th Cir.1992); **Roussell v. Jeane,** 842 F.2d 1512 (5th Cir. 1988); **Uited States v. Khan**, 728 F.2d 676 (5th Cir. 1984); **United States v. Goodwin**, 625 F.2d 693, 700 (5th Cir. 1980); **U.S. v. Lacouture**, 495 F.2d 1237, 1240 (5th Cir), **cert. denied**, 419 U.S. 1053 (1974). "The trial judge moreover, 'necessarily is accorded broad discretion in determining the merits of a claimed [Fifth Amendment] privilege.'" **Hernandez**, 962 F.2d at 1161 (quoting **United States v. Lyons**, 703 F.2d 815, 818 (5th Cir.1983)).

Thus, even if petitioner could make a showing that the exclusion of testimony may have impacted his ability to present his defense, the U.S. Fifth Circuit has recognized that a witness's Fifth Amendment privilege cannot be overcome or

trumped by the defendant's desire to present his case. Petitioner fails to show that he is entitled to federal habeas relief on this claim.

Accordingly;

## <u>RECOMMENDATION</u>

For all of the aforementioned reasons, it is hereby RECOMMENDED that the petition of Troy Taylor for issuance of a writ of habeas corpus under Title 28, United States Code, Section 2254 be DENIED with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 21st day of May, 2009.

_____

LOUIS MOORE, JR.

United States Magistrate Judge