TROY TAYLOR                                    CRIMINAL ACTION

VERSUS                                         NO. 06-2897

BURL CAIN, WARDEN                              SECTION "B"(6)

## ORDER AND REASONS

Before the court is Petitioner Troy Taylor's objections to the May 21, 2009 Report and Recommendation of Magistrate Judge Louis Moore, Jr. (Rec. Doc. 15), who recommended the dismissal of Mr. Taylor's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 with prejudice. (Rec. Doc. 12).

**IT IS ORDERED** that Petitioner Taylor's objections are overruled and the Court adopts the Report and Recommendation of the Magistrate Judge, **DISMISSING** the instant § 2254 claims for habeas relief.

## DISCUSSION

### I. Standard of Review

Upon timely objection of a magistrate judge's findings and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(2009). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with

instructions." *Id*.

## II. Sufficiency of the Evidence

Petitioner alleges that the evidence was insufficient to convict him of attempted second degree murder, but concedes that there was sufficient evidence to convict him of the lesser included offense of aggravated battery. (Rec. Doc. 15). He claims that the state failed to present proof of the specific intent necessary for a conviction on a charge of second degree murder. Specifically, Petitioner argues that the prosecution failed to prove that he had any intention of killing the victim and that the victim was never in any danger of dying; however, Petitioner concedes that the victim was seriously injured due to the stab wounds he inflicted under her chin. (Rec. Doc. 1 at 29).

Petitioner entered a plea of not guilty and not guilty by reason of insanity, and he asserts that he presented "undisputable expert testimony" of his state of mind at the time of the crime, namely that he was "heavily intoxicated" and under the influence of stimulants. (Rec. Doc. 15). However, Petitioner presented no admissible evidence to support his claim of intoxication. (*See* Rec. Doc. 12 at 35-37). Petitioner also asserts that the "victim's actions of jumping from a moving vehicle at a speed of 60 mile[s] per hour reveals that she was not injured in anyway [sic] associated with death," and he argues that the jump from the car was more life threatening than the stab wounds he inflicted. (Rec.

Doc. 15).

A claim of insufficiency of the evidence is a mixed question of law and fact, requiring the court to examine whether the state court's denial of relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The relevant inquiry a reviewing court must utilize in analyzing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372, 378 (La. 1982). All evidence, direct and circumstantial, must meet the *Jackson* reasonable doubt standard. *State v. Jacobs*, 504 So.2d 817, 820 (La. 1987).

In addressing Petitioner's sufficiency of evidence claim, the state district court on post-conviction relief correctly applied the federal standard set forth in *Jackson*, 443 U.S. at 316-17, and also set forth the applicable state law concerning the elements of second-degree murder. (Rec. Doc. 12 at 17 n.15). The state district

court properly stated that "[t]o prove attempted second degree murder, the state must establish beyond a reasonable doubt that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal." (Rec. Doc. 12 at 18). The state district court referred to *State v. Andrews*, 665 So.2d 454 (La. App. 5 Cir. 1995), in explaining that "[a]lthough a specific intent to inflict great bodily harm may support a conviction for murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder." (Rec. Doc. 12 at 18).

The state court reviewed the testimony of the victim, Secondra Johnson, and highlighted some of the pertinent facts of the case:

> [T]he record illustrates that the petitioner jumped on the victim's back as she lay in bed and placed a knife to her throat. After the petitioner led the victim from the bedroom into the kitchen, an argument ensured [sic] whereupon he repeatedly stabbed the victim under her chin, causing her to lose a substantial amount of blood. The petitioner then fought the victim to the ground and sliced her on several places on her body. As a result of her injuries, the victim needed an artificial artery placed in her throat, twenty-seven staples under her chin, a blood transfusion, and stiche[s] in her hands.

(Rec. Doc. 12 at 18-19)(internal citations omitted).

The court reviewed the facts of this case, and compared them to two other similar cases. First, in *State v. Weiland*, a defendant's appeal of his manslaughter conviction was upheld because the fact that the defendant repeatedly stabbed the victim with a bayonet was enough evidence of his state of mind that a

rational trier of fact could have found the defendant guilty beyond a reasonable doubt, when the evidence was viewed in the light most favorable to the state. 562 So.2d 950, 953 (La. App. 5 Cir. 1990).

Similarly, in *State v. Lewis*, an attempted second degree murder conviction was upheld on appeal. 698 So.2d 456 (La. App. 5 Cir. 1997). The court held that the intent to kill may be inferred from the extent and severity of the victim's injuries, which included, among others, multiple stab wounds, and a puncture of the left iliac artery, which is life threatening and caused a considerable amount of bleeding. *Id.* at 459-60. The court also highlighted the importance of the fact that, after inflicting the serious injuries, the defendant fled the scene without seeking medical assistance for her. *Id.* at 460.

The state district court denied Petitioner's insufficient evidence claim, noting that these two cases are "markedly analogous to the present case." (Rec. Doc. 12 at 19). Subsequently the Louisiana Appellate courts also denied relief on the sufficiency of the evidence claim. (Rec. Doc. 12 at 20).

After carefully reviewing the evidence presented at trial in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found the essential elements of the crime of attempted second-degree murder, beyond a reasonable doubt, in accordance with *Jackson*, 443 U.S. at 316-17. As explained by the state district court, Petitioner's state of mind can be

inferred from the seriousness of the wounds, coupled with the fact that he fled the scene without seeking medical assistance for the victim. (Rec. Doc. 12 at 19). The state court's rejection of Petitioner's insufficiency of evidence claim was not contrary to or an unreasonable application of United States Supreme Court precedent, in accordance with 28 U.S.C. § 2254(d)(1).

### III. Double Jeopardy

Petitioner claims that his trial for second degree kidnapping and attempted second degree murder regarding the same victim violates his constitutional right against dual prosecution for the same offense as proscribed by the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution. (Rec. Doc. 15).

The United States Supreme Court established a test for determining whether two offenses are the same for double jeopardy purposes in *Blockburger v. United States*, which inquires whether "each provision requires proof of an additional fact which the other does not." 284 U.S. 299, 304 (1932). At trial, the State highlighted the fact that the charge of second degree kidnapping requires proof of the additional element of seizing and carrying off the victim from one place to another, which is not required to prove the charge of attempted second degree murder. (Rec. Doc. 12 at 21). In *United States v. Dixon*, the United States Supreme Court articulated the "same element test," which inquires whether each

6

offense contains an element that is not contained in the other. 509 U.S. 688, 696 (1993).

In his objection to the Magistrate Judge's Report and Recommendation, Petitioner articulated Louisiana's "same evidence" test set forth in *State v. Steele*, 387 So.2d 1175 (La. 1980), which states:

> If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.

*Id.* at 1177. The state district court in this case cited *State v. Washington*, 670 So.2d 1255, 1260 (La. App. 5 Cir. 1996), noting that Louisiana has not adopted the "same transaction" test which would prohibit prosecution for different crimes committed during one sequential, continuing course of conduct.(Rec. Doc. 12 at 23). The state district court reviewed the elements of second degree kidnapping and attempted second degree murder, and came to the conclusion that prosecution for both of these crimes did not violate the double jeopardy clause of the Fifth and Fourteenth Amendments, because the crime of second degree kidnapping requires the additional element of seizing and carrying away a person. (Rec. Doc. 12 at 26).

The primary elements of second degree kidnapping are (1) forcible seizing and carrying of any person from one place to

another; (2) when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon. La. R.S. 14:44.1A.(5), B.(1). The elements of attempted second degree murder require a combination of the "attempt" elements and the "second degree murder" elements. Attempt requires (1) specific intent to commit a crime, and (2) an act or omission "for the purpose of and tending directly toward the accomplishment of his object." La. R.S. 14:27A. Second degree murder requires (1) the killing of a human being, (2) specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1A.(1).

In reviewing the facts of this case, the state district court noted that:

> the petitioner, while arguing with the victim in the kitchen, repeatedly stabbed the victim in the chin and throat area. Upon completion of this overt attempt to kill or inflict great bodily harm upon the victim, the elements for attempted second degree murder were complete. Thereafter, the petitioner, while armed with a knife, stabbed, dragged along the ground, and forcibly seized the victim and placed her in a car. He additionally punched the victim and forced her to remove all of her clothes. Upon completion of these actions, the elements for second degree kidnapping were complete. Therefore, this court finds that a claim of double jeopardy is without merit and thus denied.

(Rec. Doc. 15 at 26).

In his objection to the Magistrate Judge's Report and Recommendation, (Rec. Doc. 15), Petitioner fails to establish that the state court's denial of relief on his double jeopardy claim was contrary to the established Federal law set forth in *Blockburger*,

284 U.S. at 304. Thus the state court's rejection of Petitioner's double jeopardy claim was not contrary to or an unreasonable application of United States Supreme Court precedent, in accordance with 28 U.S.C. § 2254(d).

IV. Ineffective Assistance of Counsel

Petitioner also claims to have received ineffective assistance of both appellate and trial counsel. While Petitioner's objection to Magistrate Judge Moore's Report and Recommendation concentrates on ineffective assistance of appellate counsel, he also claims to address the issue of ineffective assistance of trial counsel. (Rec. Doc. 15).

In a federal habeas challenge to a state criminal conviction, the question of whether a lawyer was ineffective in rendering assistance is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). As such, a federal court must defer to the state court's decision unless, in accordance with 28 U.S.C. § 2254(d)(1), it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Here, the issue of ineffective assistance was first raised on direct appeal, and again on post-conviction relief in the state district and appellate courts. (Rec. Doc. 12 at 28).

In evaluating claims of ineffective assistance of counsel, the test articulated by the Supreme Court in *Strickland* is whether

counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. at 687. These two criteria are conjunctive, and Petitioner must overcome a "preponderance of the evidence" burden of proof as to both. *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). To determine whether counsel's performance is deficient within the meaning of the Sixth Amendment, the relevant inquiry is whether the performance "falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998)(*citing Strickland*, 466 U.S. at 688). The Court in *Strickland* explained the necessity of deferential review of counsel's performance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

466 U.S. at 689. Therefore in order to prove deficiency of trial and appellate counsel, Petitioner must overcome a strong presumption that counsel's representation was reasonable.

Petitioner must also prove prejudice with respect to counsel, which requires that he show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, Petitioner must prove that there is a "probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner does not state how his trial counsel was ineffective in his most recent objection, however he did so in his Memorandum in Support of Application for Writ of Habeas Corpus. (Rec. Doc. 1). In his Memorandum, Petitioner contended that trial counsel failed to object to erroneous jury instructions concerning reasonable doubt, as well as the elements of second degree kidnapping. (Rec. Doc. 1 at 21).

Petitioner fails to specifically delineate how the reasonable doubt instruction violated his constitutional rights. He only cites the state cases of *State v. Mack*, 403 So.2d 8 (La. 1981) and *State v. McDaniel*, 410 So.2d 754 (La. 1982) in support of his challenge, without explanation of how these cases impact his case.

In *State v. Mack*, a state conviction was reversed because the trial judge failed to comply with Louisiana Code of Criminal Procedure Art. 804, which requires that, in all cases, the jury must be instructed to give the defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence in the case. 403 So.2d at 8-9.

In *State v. McDaniel*, a state conviction was reversed because the trial court's reasonable doubt instruction failed to comply with La. C. Cr. P. art. 804, in two respects: (1) reasonable doubt was defined in such a way as to mislead the jury into applying an incorrect burden of proof; and, (2) a portion of the jury charge incorrectly prohibited the jury from "going beyond the evidence to

11

seek for doubts upon which to acquit the defendant." 410 So.2d at 756.

In this case, the record shows that the trial court instructed the jury as follows on reasonable doubt:

> Reasonable doubt standard. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.

(Rec. Doc 12 at 31).

The jury was instructed to "give the defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence." (Rec. Doc. 12 at 31). Thus it appears that reasonable doubt was not incorrectly defined so as to mislead the jury in applying the burden of proof or to prohibit the jury from "going beyond the evidence," as in *McDaniel*, 410 So.2d at 756. After carefully reviewing the jury charges, it is clear that there was no basis for trial counsel, or subsequently for appellate counsel, to challenge the reasonable doubt instructions in this case. As such, Petitioner fails to establish an ineffective assistance claim regarding the reasonable doubt jury instructions.

Furthermore, Petitioner claims that his trial counsel should have objected to the jury instructions pertaining to the elements of second degree kidnapping:

> Second Degree Kidnapping is the forcible seizing and carrying of a person from one place to another: When the

12

person is physically injured or sexually abused; or when
the offender is armed with a dangerous weapon.

(Rec. Doc. 1 at 23). The court also advised the jury about the
burden of proof with respect to each of these elements:

> To convict the defendant of the offense charged, you must
> find beyond a reasonable doubt that the State proved:
> One, that the defendant forcibly seized Secondra Johnson
> and carried her from one place to another; and, two, that
> Secondra Johnson was physically injured or sexually
> abused or that the offender was armed with a dangerous
> weapon.

(Rec. Doc. 12 at 32).

The trial court's charge of second degree kidnapping correctly
reflects the State's burden of proof as required by La. Rev.
Statute 14:44.1[1]. Under the statute, the State was required to show

---

[1] **La. Rev. Stat. Section 14:44.1 provides:**

**Second degree kidnapping**

A. Second degree kidnapping is the doing of any of the acts
listed in Subsection B wherein the victim is:

    (1) Used as a shield or hostage;
    (2) Used to facilitate the commission of a felony or the
flight after an attempt to commit or the commission of a felony;
    (3) Physically injured or sexually abused;
    (4) Imprisoned or kidnapped for seventy-two or more hours,
except as provided in R.S. 14:45(A)(4) or (5); or
    (5) Imprisoned or kidnapped when the offender is armed with
a dangerous weapon or leads the victim to reasonably believe he
is armed with a dangerous weapon.

B. For purposes of this Section, kidnapping is:
    (1) The forcible seizing and carrying of any person from one
place to another; or
    (2) The enticing or persuading of any person to go from one
place to another; or
    (3) The imprisoning or forcible secreting of any person.

C. Whoever commits the crime of second degree kidnapping shall be
imprisoned at hard labor for not less than five nor more than

any of the acts listed in Section B's definition of kidnapping, coupled with any of the acts listed in Section A. The jury instructions here properly coupled the applicable elements of Section A and Section B, namely B(1), A(3), and A(5).

Thus the trial court's instruction regarding the elements of second degree kidnapping were properly given to the jury, and neither trial counsel nor appellate counsel would have had any basis for challenging the instruction. As such, Petitioner cannot meet his burden of proof regarding the elements of deficiency and prejudice, which are required for a finding of ineffective assistance of counsel, with regard to the jury instructions about the elements of second degree kidnapping. *Strickland*, 466 U.S. at 697.

Petitioner Taylor also claims that his appellate counsel was ineffective for raising a claim of ineffective assistance of counsel against trial counsel on direct appeal, thus barring him from filing these claims on post-conviction relief. (Rec. Doc. 15). With respect to this claim, Petitioner fails to prove the prejudice element, as required by the Supreme Court in *Strickland*, 466 U.S. at 697.

As noted by the state appellate court, ineffective assistance claims are normally not addressed on direct appeal but can be

_____

forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.

addressed if the record is sufficient to resolve the claim. The state appellate court nonetheless addressed the issue, and denied the ineffective assistance of counsel claim. (Rec. Doc. 12 at 34). In order to meet the "actual prejudice" element of *Strickland*, Petitioner would have to show that, but for raising the claim on direct appeal, he would have prevailed in post-conviction proceedings on the merits of the claim. 466 U.S. at 697. After reviewing each of Petitioner Taylor's ineffective assistance of counsel claims, it is clear that he has not met his burden of proving deficiency and prejudice with respect to each claim. As such, Petitioner's claim that appellate counsel was ineffective for raising a claim of ineffective assistants of counsel against trial counsel on direct appeal lacks merit, bordering on being frivolous on its face.

## V. Prosecutorial Misconduct and Denial of Right to Present a Defense

Petitioner presents the claims of prosecutorial misconduct and denial of the right to present a defense in tandem. (Rec. Doc. 15). He claims that the prosecution violated his Sixth Amendment right to present a defense by objecting to the defense calling two witnesses, Clay Raymond and Herbert Johnson. (Rec. Doc. 1 at 37). Petitioner's defense was insanity at the time of the crime because of drug and alcohol use and toxic psychosis resulting from use of crack-cocaine, LSD, and alcohol. (Rec. Doc. 12 at 35 n.22). At the

time of the trial, the two witnesses were incarcerated on non-related drug charges and were subpoenaed to testify. Petitioner claims they were to testify that they either sold or smoked crack-cocaine with Petitioner on the night before the crime. (Rec. Doc. 12 at 35 n.23).

Petitioner asserts that the prosecution threatened to prosecute the two to the fullest extent of the law for any inculpatory statements which may appear in their testimonies. (Rec. Doc. 1 at 32-33). The trial court appointed attorneys to represent Mr. Raymond and Mr. Johnson, who invoked their Fifth Amendment rights not to testify. (Rec. Doc. 12 at 36). Alternatively, defense counsel requested that its investigator be allowed to testify with regard to what the two witnesses had reported to him. After hearing argument, the court denied the defense request, but allowed a proffer testimony from Don Carter, the investigator, outside of the presence of the jury. (Rec. Doc. 12 at 36 n.27).

Petitioner argues that his right to a fair trial and to present a defense were violated when the prosecution forced the witnesses to invoke their Fifth Amendment rights and when the trial court refused to allow the defense investigator to testify before the jury concerning what Raymond and Johnson had told him. (Rec. Doc. 1 at 34-37). The trial court made an evidentiary ruling that the investigator's proposed testimony was hearsay and not admissible under state law. (Rec. Doc. 12 at 37).

In reviewing this issue, the state trial court referred to *State v. Matthewson*, 407 So.2d 1150 (La. 1981), in which the defendant, who was convicted of first degree murder, appealed his conviction because the trial court did not grant his wife immunity when she invoked the Fifth Amendment right against self-incrimination. The court affirmed the conviction, holding:

> We do not consider that the sixth amendment supports a claim for defense witness immunity. Traditionally, the sixth amendment's compulsory process clause gives defendant the right to bring his witness to court and have the witness' non-privileged testimony heard, but does not carry with it the traditional right to displace a proper claim of privilege, including the privilege against self-incrimination.

*Id.* at 1160-61 (*citing United States v. Turkish*, 623 F.2d 769 (2nd Cir. 1981); *United States v. Lenz*, 616 F.2d 960 (6th Cir. 1980), *cert. denied*, 447 U.S. 929). As such, the state trial court held that the prosecution did not impinge on Petitioner's Sixth Amendment rights and thus denied his prosecutorial misconduct claim. (Rec. Doc. 12 at 42).

Prosecutorial misconduct may justify the reversal of a conviction where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In other words, "[a] trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" *Foy v. Donnelly*, 959 F.2d 1307, 1317 (La. 1992)(*citing*

17

*Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988)(other citations omitted). Petitioner must prove that the prosecutor engaged in "either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986)(*citing Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1983)).

In this case, the prosecution's statement that the two witnesses, Raymond and Johnson, would be prosecuted if they provided inculpatory evidence that they had committed a crime does not constitute misconduct. Each witness had been prosecuted for drug-related charges and had an opportunity to discuss their testimony with a lawyer. The court's action of appointing counsel to represent the witnesses was proper, as was the prosecution's informing the witnesses of their Fifth Amendment rights in light of their pending charges and potential charges if they committed perjury.

Petitioner further contends that in addition to denying his right to present a defense, the prosecuting attorney committed misconduct by emphasizing to the jury that Petitioner could not present any witnesses to corroborate his own defense. Petitioner refers to the prosecutor's closing argument and rebuttal arguments to illustrate his argument. For example, in his rebuttal arguments, the prosecutor told the jury:

> When a defendant comes in and mixes up this little
> cocktail for himself, if you will, that's not

18

reliability. That's, that's when you should be saying, well, well, you know, I'd like to have a little corroboration for this, you know, I'd like to have somebody else, you know, tell me this, you know. But you don't, So he's going to come in here and cook up this cocktail for you out of his brain and say go ahead, believe me, and therefore, I'm psychotic and, therefore, I didn't do it and, therefore, I'm not guilty. I don't think so ladies and gentlemen.

(Rec. Doc. 1 at 39-40).

The prosecutor's comments relating to Petitioner's failure to provide a corroborative witness were not necessarily referring only to the testimony of Mr. Raymond and Mr. Johnson. Rather the defense offered the testimony of several witnesses, none of which corroborated Petitioner's alleged intoxicated state of mind. As such, the prosecutor's comments about the lack of corroborative testimony could have been referring to any of the defense's witnesses. The comments could have also been referring to Petitioner's own testimony about driving the victim's car, or to the victim's testimony that Petitioner's speech was not slurred, neither of which corroborate his defense. (*See* Rec. Doc. 12 at 43-46).

The prosecutor's comments did not so infect the trial with unfairness as to constitute a violation of Petitioner's due process rights, given the significant evidence against Petitioner which established his guilt and undermined his defense.

Petitioner also claims that he was denied his right to present a defense, as guaranteed by the Sixth Amendment. (Rec. Doc. 15). With regard to the testimony of the defense's investigator, Don

Carter, it is not the proper role of a federal habeas court to review the admissibility of evidence under state law. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). A state court's evidentiary ruling presents a cognizable federal habeas claim only if the ruling results in a "denial of fundamental fairness." *See Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).

With regard to Mr. Raymond and Mr. Johnson, the Compulsory Process Clause of the Sixth Amendment grants a defendant the right to offer testimony of favorable witnesses and to compel their attendance at trial. However, to exercise this right, a defendant must show that the testimony would be material and favorable to the defendant, not merely cumulative. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982). The testimony that Mr. Raymond and Mr. Johnson allegedly would have stated if called to testify was not likely material enough to undermine confidence in the verdict. *See Berkley v. Quarterman*, 310 Fed.Appx. 665, 674 (5th Cir. 2009). The information that Raymond and Johnson allegedly would have provided referred to Petitioner's state of mind on the night before the crime. In light of the testimony of two other witnesses who saw Mr. Taylor on the morning of the crime, as well as the testimony of the victim, and of Petitioner, the excluded testimony cannot be said to be material.

Furthermore the compulsory process right to obtain witnesses in one's favor must yield to a witness's Fifth Amendment privilege

against self-incrimination. *United States v. Hernandez*, 962 F.2d 1152, 1161 (5th Cir. 1992). Even if Petitioner could make a showing that the exclusion of testimony may have impacted his ability to present a defense, a witness's Fifth Amendment privilege cannot be overcome or trumped by the defendant's desire to present his case.

## CONCLUSION

After carefully reviewing each of Petitioner's claims, it is clear that (1) there was sufficient evidence to convict Petitioner Taylor of second degree kidnapping and attempted second degree murder; (2) his dual convictions do not violate the double jeopardy clause of the Fifth Amendment; (3) neither his trial counsel, nor his appellate counsel was ineffective within the constitutional guidelines of the Sixth Amendment; (4) the prosecution did not engage in misconduct; and (5) Petitioner Taylor was not denied his right to present a defense. As such, Troy Taylor's § 2254 petition for habeas relief is **DISMISSED**.

New Orleans, Louisiana, this 29th day of July, 2009.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE